Thank you Mr. Piller. Please be seated. First case up this afternoon is 4-25-0294, Team of the State of Illinois v. Roosevelt Yarber for the appellant. What did you say your name was? Cecilia Van Buren. Pronounce it Van Buren? Yes. Welcome. And for the appellee? Thank you. I'm here to support David Robinson for the people of the State of Illinois. Thank you Mr. Robinson. Mr. Moore, welcome. I don't think there are many courts where we have oral arguments for 7-11 students but this is a court that welcomes it and you're welcome to do it and I think it's a nice thing to do. With that then Ms. Van Moore you may make your argument this time on behalf of the appellant. Good afternoon your honors. May it please the court. My name is Cecilia Landor and I represent defendant appellant Roosevelt Yarber. Your honors, this is an easy case. When Mr. Yarber's probation was revoked and he was resentenced, the trial judge improperly sentenced him for his probation conduct rather than for the original offense. Secondly, Mr. Yarber was entitled to a waiver of court assessments under Illinois Supreme Court Rule 404-E and his trial attorney was ineffective for failing to file that waiver. Just to get straight into the law and the first issue, trial judges are limited in what they can properly consider when sentencing a defendant for revocation of probation. So evidence of their conduct on probation is of course relevant but it can only be considered as evidence of their rehabilitative potential. Let me ask a question. If the defendant is asking for probation or for a lesser sentence than what he fears the behavior on probation is highly probative of their ability to be rehabilitated. I can dive right into the case law to look at a few cases the state cited. Young and Pena. Young and Pena are both great examples of how this should go. The defendant in Young had committed several retail thefts, I want to say seven to eight, and she was eventually sentenced to probation for the eighth, the seventh or eighth. And while she was on probation she stole items from a place that she was doing community service. And so the evidence of her theft was extremely probative for her lack of rehabilitative potential for that theft. Similarly in Pena, the defendant was charged with cocaine delivery or a controlled substance and she continued to use cocaine, test positive for it, throughout the year up until the very date of her resentencing hearing. So in Mr. Yarber's case it's a little different. None of the evidence, the judge almost barely referred to in the resentencing hearing the actual offense. She mentioned it in two sentences. And she didn't refer at all to other domestic abuses, other domestic offenses, issues related to domestic violence that Mr. Yarber had, the ways that he conducted himself over probation. She actually said it was technical violations on R46. So he had drug alcohol, excuse me, and of course that's a term of probation so he had violated his probation. But the judge in resentencing him seemed to focus wholly on these violations and his issues with probation in the past. And so it's pretty similar to the Gans case where the judge seemed to punish him cumulatively for, or punish the defendant in Gans cumulatively for his kind of failures to successfully complete probation and for issues with his prior records. So none of the state referred to the 22 statements that the court made. I counted 23. I have 13 of those are what I would consider broke clearing language, quote unquote, where the court is kind of, you know, announcing what they're going to do in the sentence and so forth. Two of those statements are about Mr. Yarber's failure to complete probation successfully. Three are about good things that he had done in the jail. Four are about his criminal record in general. And only once did she stay other than in saying I'm resentencing you pursuant to this offense. Only once did she refer to the actual offense. And not even really in detail. What she said about that was, quote, he has multiple domestic violence offenses and he's been involved in, according to the personal history and the PSI, multiple receiving end and delivering end of domestic violence throughout his life with various partners. So she's not even referring specifically to the individual offense, but, you know, referring to Mr. Yarber as both a perpetrator and also a victim of domestic violence. Counsel, I have a question I'd like to address to you. Yes, please. Is my understanding correct that your argument to this court is that the trial court abused its discretion by imposing an excessive sentence that punished the defendant for his conduct on probation rather than for the underlying offense? Yes, that is correct. What was his conduct on probation that you are alleging the trial court punished him for? So the part that he pleaded guilty to, it's a section in the first petition to revoke, 3T2, and it's simply drinking alcohol on two occasions. And of course that is, you know, it's legal in the world, and of course it was prohibited to him through his term of probation. But it has no real bearing on his abilities. So you think the trial court was punishing him for drinking alcohol? Just based on, you know, the case law says that we have to look at the remarks of the trial court. Young says that, as well as some other cases. And so just parsing through the remarks of the trial court, you know, as I said, the trial judge spoke, or the sentencing judge, excuse me, she said four things about his prior record. She talked about how he had difficulty in completing probation successfully. Wasn't this Judge Yoder? I'm not sure, actually. The reason I asked it, that's William Yoder is the trial judge who opposed sentencing. Oh, yes, yes, sir, your honor. And I think, you know, similar to the Gans case, where it seemed like the judge was sort of comparing the instance of him not being able to fulfill this probation to his previous probations where he had been unsuccessful, and kind of adding that cumulatively together and saying, you know, it's time. The reason I asked you the question I did is because this court is very familiar with this kind of argument being raised. Absolutely. The guy was sentenced to probation. He was found to be in violation of his probation. And then when the court sentenced him on a violation, it was the claim that he was being punished for his behavior while in probation. But in all the instances I recall, that was because of some serious criminal misbehavior. And the argument from the defendant is, judge, you can't punish him for his serious criminal misbehavior, which was the basis for the violation of probation. Instead, you're required to sentence him based upon the offense of which he was originally convicted. Absolutely. But here we have the behavior considering violation as drinking alcohol, which you can't do if you're on probation as a condition, and not reporting another technical violation. So I don't understand. What is the terrible behavior that the defendant supposedly engaged in while on probation that you're claiming the trial court was punishing him for with his sentence? So it's not so much terrible behavior as an accumulation of, I think, what the trial court views as an inability to follow the law, which of course is serious. But I think when you're talking about people doing really serious things on probation... That's kind of how people wind up in prison. Yes. Is their inability to follow the law. Absolutely. And the judge outlined his prior criminal history. So, as Justice Steigman, you're trying to convince us that this judge hammered this guy with seven years at 85% because he drank some alcohol on probation. I mean, that's actually what happened. He pleaded guilty to... No, no. That's your interpretation of what happened. It is true. He did get seven years at 85%. But... It is your interpretation of it is based on, solely based, or primarily based on his violation for drinking alcohol. And why of all the other things the court outlined in its final... The law states that, Young states specifically that it must be clear from the record that the judge imposed the sentence for the underlying offense. The underlying offense is the most serious domestic battery that can occur. Strangulation. Absolutely. There was a plea agreement to begin with, so the judge has never really sentenced him other than being willing to accept the plea agreement. I mean, I think that in the judge's statements at sentencing, despite the fact that, to your Honor's point, it was a serious crime, none of the judge's comments went to Mr. Yarber's ability to maintain the really substantive, what the judge termed, not the technical terms of the probation, but the substantive terms of the probation. So maybe when he said he was sent to prison and parole revoked, parole revoked and ultimately discharged, that's kind of substantive. I agree that that is substantive, but I think that, I would argue that that doesn't go to the underlying offense. Well, it goes to his potential for being able to successfully complete probation. And your argument is the court's not supposed to consider any of that. It's supposed to just say, I'm sentencing you to the original offense and here's what you're sentencing. I would slightly disagree. I think that the court is certainly allowed to consider that. And courts, it would be, I think the case law shows that it would just be really absurd to require judges to not consider the probation conduct. And I think the state referenced a quote from Young about how this is a trap for trial judges. And it certainly is difficult. And I acknowledge that there is a difficulty in kind of parsing out, when a sentencing judge is sentencing, parsing out the words to make sure that they do it properly. And from the case law that I read, it feels like it's really not supposed to be looking really hard at each individual thing that they say. But at the same time, Judge Yoder didn't refer at all to Mr. Yarber's underlying crimes. And he didn't refer specifically to how his probation conduct. Well, that's what he's there to be sentenced for. I mean, everybody in the courtroom knew that. No, that's absolutely true. So he doesn't say the words. Therefore, he sentenced him inappropriately. It's not just about, I think, not just saying the words. You know, I don't think there's like magic words that need to be said. But I think enough needs to be said. And when you look at the 22 statements, that only one is in general speaking about the offense, it doesn't seem compared to the case law, such as Young and Pena, and, you know, in contrary to Gans, that enough was said about the specific offense. Counsel, part of our questions, I think, reveal is sympathy we have for the trial court. And that's because back before we came across this wonderful job, we were all trial judges one time or another. And we're in a position like this, each of the three of us, an occasion to be involved in sentencing and, as in this situation, resentencing, where someone was originally put on probation, perhaps by the judge in the exercise of the judge's discretion, or in this case, as Justice Connick pointed out, where the court essentially just went along with the plea agreement, where the defendant was going to plead guilty to this charge and get sentenced to probation. Maybe the trial court had some reservations about that, but it's very hard to reject a plea agreement. We also know the trial courts don't know everything that's underlying the circumstance. In any event, the point being, we've all been there where someone's sentenced initially and now is resentenced. And one of the factors I remember I considered, and I think I've written about in the appellate court, is a determination of the defendant's rehabilitative potential. There might be some uncertainty about that when you're originally sentencing him. You think, well, you know, this guy's had problems and he's had difficulties. Maybe, however, we could try him on probation here and see if we can, through probation assistance and guidance, help him to address whatever his underlying problems would be, mental health, drugs, alcohol, whatever it is. But when the violation has now occurred and it's now time for resentencing, my assessment always was that his rehabilitative potential now appears much less than it did at the time of the original sentencing. And typically, that would account for a greater sentence. As a matter of fact, there were several instances in which I told defendants who were seeking probation, with all the offense, that it's like this, Mr. Smith. I could go along with that now, though I'm hesitant to do it, in the hopes that you will demonstrate that you will perform appropriately on probation. Or I could sentence you to prison for the minimum sentence of two years. But if I sentence you to probation and you fail to comply with it and your probation is ultimately revoked, then you will have demonstrated your rehabilitative potential is less than I originally thought. And you're not going to get a two-year sentence. It will be greater. Do you still want me to sentence you to probation? I mean, that's how stark it was. It won't surprise you that I had people say, oh, yeah, sure, Judge. Sentence me to probation. I'll do so much better. Sometimes they did. Most times they didn't. Point being, isn't this all about a sense of the defendants rehabilitative potential and hasn't he demonstrated by his behavior on probation that this is not going to work and that he should get a significant prison sentence? Well, to your point, Your Honor, I think it would be a different case and I would probably not be making this argument if he had committed further domestic offenses while on probation. Well, but then wouldn't he be highly judged? You can't punish him for his misconduct. I actually don't think I would because of Pena and Young. But I think that those cases show that. I think it's, of course, hard. And to your point about trial judges, I think that seems like a truly hard job. But I think, and that's where I think that it's kind of on a fine line, where, of course, you can take that evidence. It would be absurd, like the case law says, to say you couldn't. It wouldn't be probative. Like, for example, in Pena, it's highly probative that the defendant was using cocaine multiple times up until the resentencing when her charge was selling cocaine. But I think, you know, to, and your point is well taken about they've shown their, or have not shown their rehabilitative potential. But I think for, to give such an excessive sentence for what the judge, what Judge Yoder himself called technical violations is just too extreme in this case. And I think... Because that proves the point. He clearly didn't. He didn't give it for some technical violation. He gave it for the underlying offense. Yes. I mean, your argument just proves the point of why it's wrong. He gave the sentence because of the seriousness of the offense for which he was standing before the court, not the petty violation that resulted in resentencing. Well, I mean, my argument, you know, as I've said, is the case law tells us to look at the trial judge's remarks and to make sure that there's no kind of commingling between the underlying offense and the probation contract. Obviously, though, the probation contract could... But this case is by and larger where the court is just going on and on about the nature of the activity that occurred during probation that is now resulting in a resentencing. And that's when you most frequently find an argument, at least, to be made, that the whole focus of the court's attention was on the violation, how terrible it was, the horrible things that he did during his probationary period. And because of that, I'm going to sentence you to X number of years. Now you've got something to argue. But when it's obvious here that this guy has a horrendous previous history on probation, then that, as both justices have pointed out, the judge didn't sentence him to the probation based on the weighing of the elements. The judge sentenced him to probation because it was a deal. And now, in previous times, he's been to prison, paroled, been to prison, paroled, multiple probation violations. He's here now on a technical violation, and he gets seven years at 85%. I would just argue that the trial court, what they did is similar to GANs, where the reviewing court found that he was sentenced for his probation conduct. And so in GANs, the trial court's comments referred to the defendant's level of criminality, the fact that the defendant had never been sentenced to the IDOC, and the fact that it was time for the defendant to, quote-unquote, take responsibility for his actions. So these comments strongly persuaded the reviewing courts that the defendant was being punished for his conduct, kind of his overall cumulative conduct, in the criminal justice system rather than for this specific offense. How is it that you contend, though, given the original charge and the fact that he could have been sentenced to 14 years in the penitentiary, that seven years at 85%, and I don't know if there was credit for time served at all, that that is an excessive sentence? I would, to that point, I would argue the state saw it fit to offer him seven years, and he was originally offered probation as well. Additionally, on probation, there were no other domestic offenses. So he has really shown that he is not, you know, so far going to be doing these domestic offenses. But I'm sorry, I've seen my light on. Is it okay if I move to argument two briefly? Thank you, Your Honors. So just touching briefly on argument two, there's probably a split of authority in this district on this issue of 404E versus Rule 472, and I would argue that each of Your Honors has signed on and concurred in either Cadango or Baker, but this court did reach the merits of the issue. And so we would— No, what happened, did you say? Oh, I said each of Your Honors has concurred in either Cadango or Baker, where this court did reach the merits of the issue about the certificate of 404E. I think you've addressed that sufficiently in your brief. Okay, okay, all right. We don't have time, I'm going to go ahead. Okay, thank you, Your Honors. Thank you, Counsel. Mr. Moore, you may present your argument at this time on behalf of the people. May it please the Court?  Opposing Counsel, my name is Devin Moore, and today I'm here on behalf of the people, pursuant to Illinois Supreme Court Rule 711, under the supervision of David Robinson and the Illinois State's Attorney's Appellate Prosecutor's Office for the Fourth District. Today, the defendant brings two claims before the court for review. The first claim is a claim of excessive sentencing for commingling probationary conduct with the underlying offense at the sentencing hearing allegedly. And the second claim is a claim that ineffective assistance was done by the trial counsel defendant for failing to file a fee waiver under Supreme Court Rule 404. Are you willing to concede the second issue? I am not willing to concede the second issue. All right. For the second issue specifically, I would like to... I didn't mean to sidetrack you. No, I would like to first address the second issue today because there is some individual cases that instruct in a different manner than people feed Kodango and people feed Baker. Is that a diplomatic way of saying the appellate court has spoken with a fourth problem? I would say that there is currently a different understanding on what does or does not fall under the contemplation of the statutory language of Illinois Supreme Court Rule 472 for the Fourth District. Did the judge do something wrong? I would not say that the judge did something wrong, but I would say that the Supreme Court Rule is a newer rule. It was enacted in 2019. There hasn't been much guidance by the Illinois Supreme Court on what is exactly contemplated under the language of it. Who made the mistake? I would say that specifically one of the individual dissents that was an irrelevant case. I'm asking you who made the mistake in this case? I see. Because you're saying that a mistake was made. Yes, and the specific mistake that would have been made here is that jurisdiction is barred under Illinois Supreme Court Rule 472 because this court can't act as a court of first instance for errors in the imposition of fines, fees, or assessments. Specifically, what this means is that under People v. Niblin, the court found that a claim of ineffective assistance for a trial counsel failing to file a fee waiver under Rule 404 was jurisdictionally barred because it was brought up on appeal first rather than at the trial court. This was later upheld in a more recent case, People v. Bogart, which was disposed of on February 24th, 2026. People v. Bogart wasn't specifically cited in the state's brief because it was after the brief's filing in December of 2025, but because it's relevant and goes directly to the question of statutory interpretation. Was Bogart filed in this district? Yes, it was. It was filed in this district. People v. Bogart was specifically written by Justice Kavanaugh and concurred with Justice Feigman, and Justice Dougherty issued a dissent in People v. Bogart. Specifically in People v. Bogart, Justice Dougherty raised two specific issues in his dissent regarding specifically the interpretation of the statutory language of Rule 472. I would like to address those two major issues that were in his dissent because the state believes that it is very informative on what is appropriate statutory interpretation and to provide further guidance in this individual question for today's individual issue being brought. Specifically, the first issue that Justice Dougherty speaks on in his dissent is a motion under Rule 472 should not adjudicate the effectiveness of counsel. In his opinion, he thought that Rule 472, a motion to adjudicate the effectiveness of counsel, was too weighty of a consideration to be couched under a motion under Rule 472. What I would state is that this appears to be at direct odds with the Illinois Supreme Court's supervisory order in People v. Rio Salazar. Those supervisory orders have no precedential effect, do they? They don't have any precedential effect, but in a situation where there is still ambiguity on the proper means of interpreting the statutory language, the state does believe that it provides persuasive value and that the court should take judicial notice of it just so that they can be aware of how potentially the Illinois Supreme Court could understand and interpret and contemplate the language of Rule 472. Specifically, what occurred in People v. Rio Salazar was that the 3rd District Appellate Court heard a claim from defendant who was alleging ineffective assistance of counsel for his trial counsel failing to object to certain fines that were imposed upon him after he made a plea bargain stating that he should not receive any fines for the plea bargain. Specifically, it was a claim alleging that he didn't get the benefit of his bargain. Essentially, what occurred is that this was initially heard in 2017, two years before the enactment of Illinois Supreme Court Rule 472. What occurred is that on the appeal, it was denied under supervisory authority of the Supreme Court, but the Supreme Court gave guidance to the 3rd District to vacate the analysis that the 3rd District conducted for the ineffective assistance of counsel claim for the failure of trial counsel failing to object to the fines and remand it to the Circuit Court to be moved forward with pursuant to Illinois Supreme Court Rule 472. Justice Burke specifically wrote in her dissent that was dissenting only to the supervisory order that going forward, nothing prohibits defendant from seeking relief in the Circuit Court as an original matter pursuant to Rule 472. While this doesn't provide presidential guidance, we do believe that it provides persuasive guidance on how the Supreme Court could potentially contemplate what claims do fall under Illinois Supreme Court Rule 472. In addition, the second issue that was brought in Justice Dougherty's dissent in People v. Bogart is, Rule 472 addresses errors in the imposition of assessments, but does not address having assessments waived. Waiver is only contemplated under Rule 404. The State would allege that People v. Niblin and People v. Bogart by its majority disagrees with this opinion. Specifically, with People v. Niblin writing, the language of Rule 472 is broad and unqualified. Further, by Rule 472, whose plain terms, the rule is not limited to specific errors, but applies to any claim of error in the imposition of assessments. Let me ask a question, Mr. Moore. How much money are we talking about here? For this case at bar, it's $1,677. And if this order were to stand, is there any chance, like when pigs fly, that this defendant would ever pay it? Whether or not the defendant would potentially pay it, it's due to be paid a year after his stay and his time of correction. What's the yearly line in this defendant ever paying a cent? Most likely, he would not. So this essentially, and by the way, I appreciate your argument, and it's nice lawyer-like construction here, but we're dealing with an issue which is just kind of silly, and what we need to do is have the Illinois Supreme Court resolve it. Before Rule 472 was promulgated by the Supreme Court in February of 2024, we had all kinds of silliness and issues raised on appeal about fines and costs and things. And again, like in this case, no one was ever going to pay him anyway. It was all an academic exercise. And finally, the Supreme Court said, we're not going to bother the appellate court with this anymore. If you're really serious about this, raise it at the trial level. And my information is because it's such a nonsense thing, very few people bother. It doesn't surprise me. It's just something that OSAD, to its credit, after all, if there's some issue to raise, they're going to raise it. But I suppose what I'm saying is I appreciate your efforts, but I think until such time as the Supreme Court clarifies this and says Rule 472 is going to be the sole means, that speaking only for myself, I don't want to devote any more time to nonsense issues and arguments about 404 and this stuff, because it really doesn't make any difference and it's not going to affect anybody. Okay. Despite the fact, Mr. Moore, you did a very nice job of constructing one of those. I very much appreciate it. So go ahead and talk about the first issue the defendant raises, if you would. Of course. So I won't go into a point on issue two at this point, but I would like to address quickly a number of statements that defendant made during their argument. Specifically, rehabilitative potential is something that is very well understood by defining precedent in the Fourth District. This is clearly stated in the case People v. Strickland. And it's well understood that the best time for a judge to judge the potential, rehabilitative potential of a defendant is at the sentencing hearing after everything has occurred, because that's when the individual can make the most informed judgment on whether or not this individual could be successful in an alternative sentencing or if it would be best to have this individual sequestered away. Specifically, the defendant notes that there needs to be a clear statement of the underlying conduct at the time of the sentencing hearing. And they cite to People v. Garrig, a non-binding, I believe, Third District court case, that specifically states that the record must clearly show that the court considered the original offense when imposing the sentence. What the defendant fails to do, however, is expand on the full quotation of that. And specifically, what People v. Garrig states is the record must clearly show that the court considered the original offense when imposing the sentence. Thus, the record should show that the trial court, one, considered the evidence, if any, received during the original trial. There was only a plea hearing. There was no original trial. Two, considered any pre-sentence reports. That was clearly done during the sentencing hearing as demonstrated with the court proceedings. Three, considered evidence and information in aggravation and litigation. This was clearly demonstrated as well. Four, heard arguments regarding sentence alternatives. This was done as well at the sentencing hearing. And finally, five, afforded a defendant an opportunity to speak in his own behalf. So even to the case that defendant cites to the state that the underlying conduct needs to be clearly spoken about at sentencing hearing, the trial court judge did so. As well as that, the defendant stated that the trial judge did not refer at all to the underlying offense. This was incorrect, specifically stating the defendant in this case is being resentenced in relation to a charge of aggravated domestic battery involving strangulation. Essentially, the argument by defendant is that the trial court judge needs to state and speak on the underlying offense to some degree, but that they never specifically state to what degree this is. And they provide no binding authority specifically stating that that is a test and the required action by the trial court judge at the sentencing hearing. Finally, I would just like to refer to People v. Pina regarding a specific quote. When taken in context and not read in isolation, these comments actually show that the court was responding to arguments made. This goes specifically to the quote material that defendant refers to that the trial court judge physically said, stating, the defendant has been given ample opportunity on probation to comply with the terms of his probation. He's had significant difficulty in complying with the terms of his probation. He has done some good things down in the jail. He's a pod worker. He's done other self-help things in the jail. He should be commended for that. That clearly goes to the arguments that were made by the trial counsel in regards to the factors in mitigation and aggravation. And finally, the statutory range for the defendant was between three to 14 years. As such, the state firmly believes that a sentence of seven years is not excessive. For these reasons, as well as the reasons brought in the brief, the state asked this court to affirm Issue 1 and remand Issue 2 to the trial court for further proceedings. Thank you, Kevin, so much. Ms. Landau, on behalf of the appellant, will you read your rebuttal argument at this time? Just a very brief rebuttal. So in each of the cases that I've talked about, and one more, Varghese, so Gans, Pina, Young, and Varghese, the court or the state brought additional evidence into the sentencing hearing that went directly to the crime, the underlying offense, and how the defendant was not able to be successful on probation because of their continued behavior engaging in that specific offense. Here, there was no such evidence. What do you call the PSI? Oh, additional, like such as additional witnesses. PSI is rather full of background. Absolutely, but information, I guess I mean, that went to their conduct during the probationary period. So, for example, in Varghese, actually the issue was kind of similar here as a technical violation. So the defendant in Varghese had a petition to revoke a file based on a traffic violation he was driving without a license. But at the hearing, the state presented several witnesses in aggravation that showed that the defendant was engaging in contact with minors while on sex offender probation. And while that case really dealt with another issue about kind of bringing in uncharged conduct, I think it shows, you know, in Mr. Yarbrough's case, that evidence was just not present. The state obviously would have wanted to bring it in if it was. And I would just rest on my argument that seven years for technical violations is excessive. Am I being too much of a skeptic to suggest that there's no chance if this order were to stand that this defendant will ever pay a dime? I don't know that I can speculate on that, Your Honor. Because you've done a nice job, Mr. Moore's done a nice job of briefing this, and I'm not sure it rises to the level of discussing how many angels dance on the head of a pib as far as materiality and reasonableness. Well, I would just argue, you know, in the interest of judicial efficiency and economy, Your Honors have all expressed willingness to see this issue on the merits in this court. And so, you know, for Mr. Yarbrough, bringing this issue before us... Well, should we call upon the Supreme Court to put us out of our misery and resolve this case? Well, fortunately... Constantly and clearly by its rules? Fortunately, I think they will be in Niblin, which I think is before the Supreme Court right now. Okay. Thank you very much for your argument, counsel. The court will take each other under advisement. I'll stand in recess. Mr. Moore, before I go, 51 years ago, I started as a 7-Eleven student. I could never have imagined doing as well as you did today as a 7-Eleven student. Thank you, Your Honor. That was a very good job. You both are doing very well.